**Affirmed and Memorandum Opinion filed December 12, 2023.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-22-00513-CR

**JARED HOLTON SEAVEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court Cause No. 1731280R**

## MEMORANDUM OPINION

Appellant Jared Holton Seavy appeals from his conviction for murder. *See* Tex. Penal Code Ann. § 19.02. In two issues, appellant argues: (1) he was denied his Sixth Amendment Right to confront the medical examiner who performed the victim's autopsy because the State used a "surrogate" witness to establish the victim's cause of death; and (2) there was an error in the jury charge because it failed

to include the lesser-included offense of aggravated assault. We affirm.[1]

## I.  BACKGROUND

On August 17, 2019, appellant was indicted for the murder of Vanessa Mayfield ("Mayfield") for intentionally or knowingly causing Mayfield's death by stomping her with a deadly weapon, his foot. Appellant pleaded not guilty and proceeded to trial before a jury.

Susan Roe, M.D. ("Dr. Roe"), a deputy medical examiner at the Tarrant County Medical Examiner's Office, performed Mayfield's autopsy. Prior to trial, the State indicated to appellant that it intended to call Richard Fries, M.D. ("Dr. Fries"), another deputy medical examiner at the Tarrant County Medical Examiner's Office, to testify concerning Mayfield's cause of death at trial.[2] The trial court held a pretrial hearing to determine the admissibility of Dr. Fries's testimony regarding Mayfield's cause of death. Dr. Fries explained that he formed an opinion on Mayfield's cause of death based on his review of Dr. Roe's autopsy report of Mayfield and on photographs from the autopsy. It was Dr. Fries's opinion that Mayfield's cause of death was traumatic injuries to the head and neck.

Appellant objected to the admission of Dr. Fries's testimony based on the Confrontation Clause, arguing that Dr. Roe was the only witness who could testify concerning the autopsy and Mayfield's cause of death. The trial court overruled appellant's objection and ruled that Dr. Fries's testimony on the cause of death was admissible.

---

[1] This case is before this court on transfer from the Second Court of Appeals in Fort Worth, Texas, pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* Tex. Gov't Code Ann. § 73.001.  We will apply the precedent of the Second Court to the extent it differs from our own.

[2] Dr. Roe left the Tarrant County Medical Examiner's Office the year prior to appellant's trial.

The jury found appellant guilty of murder and assessed his punishment at ninety-nine years' imprisonment. This appeal followed.

## II.    CONFRONTATION CLAUSE

In his first issue, appellant argues he was denied his Sixth Amendment right to confront the medical examiner who performed Mayfield's autopsy because the State used a "surrogate" witness, Dr. Fries, to establish Mayfield's cause of death.

### A.    STANDARD OF REVIEW & APPLICABLE LAW

A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Thomas v. State*, 651 S.W.3d 102, 110 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). We will not reverse the trial court's evidentiary ruling if it was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). Therefore, we must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State,* 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

The Confrontation Clause of the Sixth Amendment guarantees the accused the right to confront the witnesses against him. U.S. Const. amend. VI. The Confrontation Clause applies to in-court testimony and testimonial statements made outside of court. *Molina v. State*, 632 S.W.3d 539, 543 (Tex. Crim. App. 2021) (citing *Paredes v. State*, 462 S.W.3d 510, 517–18 (Tex. Crim. App. 2015)). Testimonial statements are those "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Paredes*, 462 S.W.3d at 514 (citing *Crawford v. Washington*, 541 U.S. 36, 52 (2004)). Thus, the accused has a right to confront witnesses who make out-of-court testimonial statements, including forensic analysts. *See, e.g.*,

*Bullcoming v. New Mexico*, 564 U.S. 647, 651 (2011); *Crawford*, 541 U.S. at 54; *Paredes*, 462 S.W.3d at 514–15.

Forensic analysts may not testify as "surrogate[s]" regarding reports made by other analysts. *See Bullcoming*, 564 U.S. at 661 (holding that a "surrogate" could not testify regarding what the certifying analyst "knew or observed about the events his certification concerned . . . . Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part"). Therefore, "[w]hile the testifying expert can rely upon information from a non-testifying analyst, the testifying expert cannot act as a surrogate to introduce that information." *Paredes*, 462 S.W.3d at 517–18. However, expert witnesses may testify to their own independent conclusions, even if they reached those conclusions by examining data collected by another analyst. *See* Tex. R. Evid. 703;[3] *Paredes*, 462 S.W.3d at 517 ("For an expert's testimony based upon forensic analysis performed solely by a non-testifying analyst to be admissible, the testifying expert must testify about his or her own opinions and conclusions.").

## B. ANALYSIS

Dr. Fries testified at the pretrial hearing that, in forming his opinion on injuries or cause of death, he will use the autopsy report produced by the physician that conducted the autopsy, as well as photographs, radiographs, toxicology reports, and other reports taken during the procedure. Dr. Fries further testified that these items are reasonably relied upon by individuals in the field of forensic pathology in

---

[3] An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, then they need not be admissible for the opinion to be admitted. Tex. R. Evid. 703. Unless the court orders otherwise, an expert may state an opinion and give the reasons for it without first testifying to the underlying facts or data; however, the expert may be required to disclose those facts or data on cross-examination. Tex. R. Evid. 705(a).

forming an opinion on an autopsy for which they were not present. Dr. Fries explained he formed his opinion on reviewing Mayfield's autopsy report and pictures of her autopsy.

Although Dr. Fries's review of the autopsy file included the report made by Dr. Roe, Dr. Fries acted as more than a mere surrogate for Dr. Roe's autopsy report. The record shows that Dr. Fries did not blindly recite Dr. Roe's findings. Rather, his testimony illustrates his independent work. His testimony was based on his independent analysis of the autopsy report, toxicology report, radiology report, and the autopsy photographs, which he explained during the State's direct examination.

Accordingly, because we conclude Dr. Fries did not act as a mere surrogate, and offered his independent opinions, his testimony was permissible, and we conclude the trial court did not err in admitting Dr. Fries's testimony over appellant's Sixth Amendment confrontation clause objection. *See* Tex. R. Evid. 703; *Harrell v. State*, 611 S.W.3d 431, 439 (Tex. App.—Dallas 2020, no pet.) (concluding that substitute medical examiner's testimony, premised upon his independent review of the autopsy file, did not violate the Confrontation Clause); *see also Johnson v. State*, No. 14-22-00050-CR, 2023 WL 5217800, at *3 (Tex. App.—Houston [14th Dist.] Aug. 15, 2023, no pet. h.) (mem. op., not designated for publication) (same).

Appellant argues that the trial court erred because it is possible that the bleeding in Mayfield's brain shown in the photographs could have been caused by an error or improper technique during Dr. Roe's autopsy and that appellant was unable to confront and question Dr. Roe concerning this possibility. However, appellant's argument goes to the weight of Dr. Fries's testimony, not its admissibility. Further, appellant was free to question Dr. Fries concerning this possibility to question the credibility of Dr. Fries's opinion, but appellant did not do so.

We overrule appellant's first issue.

### III.   JURY CHARGE

In his second issue, appellant argues that the trial court erred by not including the lesser included offense of aggravated assault in the jury charge.

### A.   APPLICABLE LAW & STANDARD OF REVIEW

In each felony case, the trial court shall deliver to the jury a written charge distinctly setting forth the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14. A review of alleged jury charge error involves a two-step process examining: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Jones v. State*, 531 S.W.3d 309, 321 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

When the defendant fails to object, as in this case, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). Egregious harm deprives appellant of a fair and impartial trial. *See id.* In the egregious-harm analysis, we consider (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *See Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

### B.   ANALYSIS

Appellant did not object to the jury charge. Assuming without deciding that the trial court erred in its charge, we nevertheless conclude that appellant did not suffer egregious harm.

Here, the charge correctly instructed the jury on the offense of murder and tracked the offense as alleged in the indictment. There was substantial evidence that appellant severely assaulted Mayfield by stomping on her with his foot and left her unconscious. There were multiple sources of evidence directly linking appellant to Mayfield's assault. There also was evidence that appellant was aware that Mayfield could have died from the assault and that he told detectives he stomped on Mayfield's head as many as fifty times. We conclude that the jury-charge error alleged by appellant did not deprive him of a fair and impartial trial. *See Taylor*, 332 S.W.3d at 489; *Ngo*, 175 S.W.3d at 743–44.

We overrule appellant's second issue.

## IV.   CONCLUSION

We affirm the trial court's judgment.


/s/ Margaret "Meg" Poissant
Justice



Panel consists of Justices Bourliot, Hassan, and Poissant.
Do Not Publish — TEX. R. APP. P. 47.2(b).

7